**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x     **ELECTRONICALLY FILED**
THOMAS H. LEE EQUITY FUND V, L.P.,                   :
THOMAS H. LEE PARALLEL FUND V, L.P.,                 :     07 Civ. 8663 (GEL)
and THOMAS H. LEE EQUITY (CAYMAN)                    :     Hon. Gerald E. Lynch
FUND V, L.P.                                          :
                                                      :
                        Plaintiffs,                   :
                                                      :
            vs.                                       :
                                                      :
GRANT THORNTON LLP,                                   :
                                                      :
                        Defendant.                    :
-------------------------------------------------------- x


# MEMORANDUM OF LAW IN SUPPORT OF
# GRANT THORNTON LLP'S MOTION TO DISMISS THE COMPLAINT


WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

*Attorneys for Defendant*
*Grant Thornton LLP*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ..............................................................................................................4

ARGUMENT .................................................................................................................11

POINT ONE

The negligence claims must be dismissed because, as a
matter of law, Grant Thornton owed no duty to TH Lee. ....................................11

    A.     Under New York law, accountants are not liable to third parties
          for negligence absent contractual privity or its equivalent. ....................................11

    B.     The Complaint fails to satisfy any of the criteria of *Credit Alliance*,
          and thus the negligence claims against Grant Thornton must be
          dismissed...........................................................................................................13

          1.     Grant Thornton did not prepare its audit opinions for the
                 particular purpose of assisting TH Lee's investment decision. ................14

          2.     TH Lee also fails to allege conduct by Grant Thornton
                 linking it to TH Lee and evincing its understanding of
                 TH Lee's reliance....................................................................................17

POINT TWO

The claim for aiding and abetting must be dismissed because the Complaint
does not allege that Grant Thornton actually knew about the fraud that it
supposedly aided.................................................................................................19

POINT THREE

TH Lee's claims cannot be sustained because the facts alleged cannot support
a finding of justifiable reliance as required under New York law ....................................22

CONCLUSION................................................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*Ambassador Factors v. Kandel & Co.*,
    215 A.D.2d 305, 626 N.Y.S.2d 803 (1st Dep't 1995) .......................................................23

*Bell Atlantic v. Twombly*,
    127 S. Ct. 1955 (2007) .......................................................................................................23

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir. 1993) ...............................................................................................7

*Busino v. Meachem*,
    270 A.D.2d 606, 704 N.Y.S.2d 693 (3d Dep't 2000) .......................................................23

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ...............................................................................................7

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
    65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985) ..................................... *passim*

*Glanzer v. Shepard*,
    233 N.Y. 236, 135 N.E. 275 (1922) ..................................................................................12

*Grammer v. Turits*,
    271 A.D.2d 644, 706 N.Y.S.2d 453 (2d Dep't 2000) .......................................................23

*Houbigant, Inc. v. Deloitte & Touche LLP*,
    303 A.D.2d 92, 753 N.Y.S.2d 493 (1st Dep't 2003) .................................................15, 16

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) ...............................................................................7

*Kaufman v. Cohen*,
    307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) .......................................................20

*Kolbeck v. LIT Am., Inc.*,
    939 F. Supp. 240 (S.D.N.Y. 1996) ....................................................................................20

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991) ...............................................................................................5

*Krause v. Forex Exch. Market, Inc.*,
    356 F. Supp. 2d 332 (S.D.N.Y. 2005) ...............................................................................20

*Miele v. Am. Tobacco Co.*,
    2 A.D.3d 799, 770 N.Y.S.2d 386 (2d Dep't 2003) ............................................................20

*Parrot v. Coopers & Lybrand, LLP*,
    95 N.Y.2d 479, 718 N.Y.S.2d 709, 741 N.E.2d 506 (2000) ...........................................11

*Ruse v. Inta-Boro Two-Way Radio Taxi Assocs.*,
    166 A.D.2d 641, 561 N.Y.S.2d 70 (2d Dep't 1990) ..........................................................23

*Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*,
    586 N.Y.S.2d 87, 597 N.E.2d 1080, 79 N.Y.2d 695 (1992) .......................................15-16

*Ultramares Corp. v. Touche*,
    255 N.Y.170, 174 N.E. 441 (1931) ...................................................................... *passim*

*VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP*,
    348 F. Supp. 2d 255 (S.D.N.Y. 2004) ...............................................................................19

*Wight v. BankAmerica Corp.*,
    219 F.3d 79 (2d Cir. 2000) ...............................................................................................19

## Statutes and Rules

Fed. R. Civ. P. 12(b)(6) .......................................................................................................7

## Other Authorities

RESTATEMENT (SECOND) OF TORTS § 876(b) (1979) .....................................................20

## PRELIMINARY STATEMENT[1]

This lawsuit is another in a series of suits arising out of the collapse of Refco and the disclosure of a fraud orchestrated by the company's most senior executives.  This case stands out from the pack, however, in that it was brought by entities who were ultimately among the closest to the fraud—against an audit firm that was, by definition, always an outsider.

Plaintiffs here are a series of funds associated with Thomas H. Lee Partners, L.P., one of the oldest and most sophisticated private equity firms in the nation.[1]  In August 2004, more than a year before Refco's collapse, the "TH Lee Plaintiffs" invested more than $450 million in Refco and thereby acquired the majority of Refco's stock through a leveraged buy-out.  This investment followed ten months of extensive due diligence, aided by professional advisors including auditing firm KPMG LLP.  Once the TH Lee Plaintiffs acquired this interest, they became Refco insiders themselves—with representatives on the Board of Directors, unfettered access to Refco's books and personnel, and a considerable voice and responsibility with respect to the company's management.

Ignoring their own role as Refco insiders, the TH Lee Plaintiffs are now attempting to turn back the clock.  They seek to foist all the losses they ultimately suffered on their Refco investment on Grant Thornton LLP ("Grant Thornton")—Refco's outside auditor, which had no duty to TH Lee and was in fact one of the principal targets of Refco's fraud.  Plaintiffs' theory is that they would not have engaged in the buy-out in the first place had it not been for Grant Thornton's unqualified audit opinions on Refco's earlier financial statements.  This theory and

---

[1]  Plaintiffs are Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., and Thomas H. Lee Equity (Cayman) Fund V, L.P.  They will be referred to herein collectively as "TH Lee" or "TH Lee Plaintiffs."

the claims asserted here are fatally flawed as a matter of fact and law.  Indeed, it is absurd to think that a sophisticated private equity firm that made a huge and risky investment and then worked from the inside to take the company public could then use the company's outside auditor long after the fact to insure its entire loss on the investment.

Setting aside the factual and policy problems with the case, however, the allegations in the Complaint are insufficient to meet the pleading standards in this Circuit.  Plaintiffs have asserted claims for aiding and abetting fraud, negligent and intentional misrepresentation, and malpractice—all based on facts and events preceding their leveraged buy-out of Refco.  All these claims should be dismissed.

First, the two negligence-based claims (negligent misrepresentation and malpractice) run afoul of the well-established limitations on negligence suits under New York law, beginning with *Ultramares Corporation v. Touche*, 255 N.Y.170, 174 N.E. 441 (1931).  In New York, a plaintiff cannot state a claim for negligence against an auditor without first proving contractual privity or at least "near-privity" that approaches a contractual relationship.  To establish "near privity," New York courts require a showing that the auditor was aware that its work was being performed for a particular purpose and would be relied upon by a particular party, and that the auditor engaged in some "linking conduct" evidencing its knowledge of such reliance.  Here, however, the audit work on which Plaintiffs supposedly relied was all ordinary audit work for a private audit client.  There is no allegation that the audit reports were prepared for the purpose of TH Lee's leveraged buy-out.  And while Grant Thornton did respond to requests by KPMG and TH Lee for information about its past audit work, it did so subject to customary letter agreements in which Grant Thornton ***disavowed*** any "near-privity" relationship.  The full text of those letters— which Plaintiffs quote selectively in the Complaint—reveals that TH Lee knew and specifically

2

acknowledged that Grant Thornton had ***not*** performed its audit work for the benefit of TH Lee and was unwilling to assume any additional duties and obligations with regard to that work. Thus Plaintiffs cannot establish "near-privity," and the negligence claims must be dismissed.

In addition, Plaintiffs' aiding and abetting claim fails as a matter of law because they have not alleged—nor could they—that Grant Thornton ***actually knew*** about the fraud on TH Lee that it was supposedly aiding. [2]  Plaintiffs' basic theory is that Grant Thornton's audits were negligent or reckless for ***failing*** to discover the fraud.  But a claim of aiding and abetting requires actual knowledge of the underlying breach of duty in which the defendant provided substantial assistance.  The facts alleged here are insufficient to support such a finding, and thus this claim too must be dismissed.

Finally, Plaintiffs have not alleged and cannot prove that they justifiably relied on Grant Thornton's audit opinions—a failure that dooms all their claims.  The TH Lee Plaintiffs' investments followed ten months of intensive due diligence, aided by professionals in several disciplines.  While they requested and received information from Grant Thornton, they obtained that information only after agreeing to the terms set forth in Grant Thornton's access letters— which made clear that Grant Thornton's audits had been performed for a limited purpose that did not encompass TH Lee's proposed transaction and that did not and could not ensure against the presence of fraud.  Under the circumstances, Plaintiffs' allegations of reliance are simply inadequate to support any of their claims.

---

[2]   This Court has previously allowed claims against Grant Thornton to survive a motion to dismiss based on its conclusion that factual allegations similar to those presented here were sufficient at the pleading stage to support an inference of recklessness.  *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 659-60 (S.D.N.Y. 2007).  In light of that ruling, Grant Thornton's motion in this case does not repeat that argument.  For a claim of aiding and abetting, however, negligence or recklessness does not suffice; Plaintiffs must plead and prove ***actual knowledge***, and as discussed below, they have failed to do so.

**BACKGROUND**

This action, like the many others pending before this Court, arises out of an alleged fraud committed by Refco and orchestrated by Chief Executive Phil Bennett and other Refco senior executives. The TH Lee Plaintiffs claim that Refco lost hundreds of millions of dollars in the late 1990s when one of its customers suffered large trading losses in foreign currency transactions. Compl. ¶ 20. Refco allegedly transferred those losses in the form of a receivable to Refco Group Holdings, Inc. ("RGHI"), an entity that was owned by Bennett and that served as principal shareholder of Refco (and that Grant Thornton did not audit). *Id*. ¶ 21. Just before the end of each financial reporting period, Refco entered into sham transactions with unrelated third parties that had the effect of transferring the huge losses from RGHI's account to those other customers and making the losses appear to be legitimate customer receivables for Refco, incurred in the ordinary course of business. *Id*. ¶¶ 22-28. The apparent goal of the scheme was to hide the massive trading losses from anyone who was looking so that the company could project the appearance of growth and success and remain alive and thriving. Plaintiffs here contend that the executives were motivated at least in part by a desire to maintain the company's apparent success so that they could profit from the sale of their own Refco holdings.

According to the indictment against Bennett and others—on which the Complaint selectively relies—a central aspect of the scheme was hiding the truth from Grant Thornton in particular. *See* Superseding Indictment, *United States v. Phillip R. Bennett*, ¶¶ 8, 21, 25, 46, 60, 65. Refco had retained Grant Thornton to audit its consolidated financial statements beginning in the fiscal year ending February 28, 2003. Grant Thornton subsequently performed Refco's 2004 and 2005 audits, as well as reaudited its 2002 year-end financial statements in connection

4

with an SEC submission in late 2004.  Before TH Lee's investment, Refco was not yet a publicly

traded company, and thus Grant Thornton's audit opinions were not included in any public filing.

Plaintiffs in this case are all investment funds affiliated with Thomas H. Lee Partners,

L.P.—one of the oldest, most successful, and most sophisticated private equity firms in the

nation.  Before Refco's demise, TH Lee acquired a majority ownership interest in the company

by buying out RGHI, the same Bennett-owned entity through which the fraud was conducted.  In

total, TH Lee invested over $450 million in the company (Compl. ¶¶ 1, 2) and then, by virtue of

its majority position, assumed a role in the company's management, including having TH Lee-

affiliated individuals on the Refco Board of Directors.  *See id.* ¶ 83; *see also* Refco Form S-4 at

32 (Apr. 6, 2005), attached as Exhibit A to the Declaration of Ruth Braun ("Braun Decl.")

(noting that TH Lee "has the ability to control all aspects of our business"; that TH Lee may

designate at least half of the board members and a majority if the company fails to meet yearly

performance requirements; and that TH Lee and Bennett "may pursue transactions that could

enhance their equity investment while involving risks to your interests.").[3]  In light of their

majority interest in the company and their continued role in Refco's management, the TH Lee

entities and affiliated individuals have been named as defendants in at least five lawsuits alleging

securities or tort claims based on their own alleged role in the fraud, including in one lawsuit

brought by the Litigation Trustee on behalf of Refco itself.  *See In re Refco Inc., Sec. Litig.*, No.

05 Civ 8626 (S.D.N.Y.); *Kirschner v. Thomas H. Lee Partners, L.P.*, No. 07 Civ. 7074

(S.D.N.Y.); *Capital Mgmt. Select Fund Ltd. v. Bennett*, No. 07 Civ. 8688 (S.D.N.Y.); *V.R.*

---

[3]   This Court may take judicial notice of corporate filings submitted to the Securities and
Exchange Commission.  *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

*Global Partners, L.P. v. Bennett*, No. 07 Civ. 8686 (S.D.N.Y.); *In re Refco Capital Markets,*

*Ltd., Brokerage Sec. Litig.*, No. 06 Civ. 643 (S.D.N.Y.) (pending repleading).

TH Lee's investment in Refco followed ten months of extensive due diligence aided by

several third-party consultants and advisors. Compl. ¶ 2. Although TH Lee had submitted an

initial bid to buy a controlling interest in Refco back in November 2003, that bid did not proceed.

*Id.* ¶ 35. After submitting a revised bid in February 2004, TH Lee was invited to commence due

diligence for a potential acquisition. *Id.* Among the several firms enlisted by TH Lee to assist in

its effort was KPMG, which TH Lee hired to perform accounting due diligence. *Id.* ¶ 36.

KPMG's work for TH Lee included a "detailed assessment of the Company's financial

reporting for the fiscal years ending February 28, 2002, February 28, 2003, and February 29,

2004, and the risks of the proposed investment." *Id.* ¶ 36. As part of its duties, KPMG analyzed

Refco's quality of earnings, evaluated the company's accounting practices, and assessed the

quality of Refco's assets and the completeness of its reported liabilities. *Id.* KPMG's work for

TH Lee included not only examining Refco's audited financial statements—with the 2002 fiscal

year audit opinion issued by Arthur Andersen and the 2003 and 2004 fiscal year audit opinions

issued by Grant Thornton—but also examining materials underlying these audit opinions,

including consolidation schedules, audited financial statements of Refco subsidiaries,

confirmations, and other regulatory work papers. *Id.* ¶¶ 37-38.

As the timing of these events makes clear, Grant Thornton did not prepare its 2003 or

2004 audit opinions for TH Lee's benefit or for the purpose of facilitating an investment by TH

Lee, and Plaintiffs do not allege the contrary. The 2003 audit took place before TH Lee had

entered the scene. And while Grant Thornton was aware of TH Lee's interest during its 2004

audit, Grant Thornton's task in the audit was still to perform a general audit for Refco, issuing an

6

audit opinion for use by its audit client in its general business dealings.  In fact, as discussed

below, by the time it issued its February 2004 audit opinion, Grant Thornton had already made

perfectly clear in correspondence that it had ***not*** planned its audit work for Refco with the

proposed TH Lee transaction in mind and was ***not*** issuing its audit opinion for TH Lee's benefit.

There is no allegation that Grant Thornton sought or obtained any information from TH Lee or

KPMG about the contemplated transaction, as would have been necessary if Grant Thornton had

performed its 2004 audit with TH Lee's transaction in mind.

As is customary in due diligence between sophisticated private equity firms and privately

held corporations, TH Lee and its advisor KPMG requested access to Grant Thornton's previous

audit work and were granted access under strict terms and conditions set out in "access letters."

Although TH Lee's complaint quotes the access letters in this case (at ¶ 70), it does so only

selectively.  Those access letters—when read in their entirety[4]—tell a very different story than

what TH Lee now suggests.  The passages omitted from the Complaint are significant, as these

letters expressly informed TH Lee and KPMG that Grant Thornton's audit work was not

performed in contemplation of the potential transaction or for TH Lee's benefit.  Indeed, TH Lee

was told plainly that Grant Thornton's audit of Refco "was not planned or conducted in

contemplation of the proposed transaction."  *See* Braun Decl., Ex. B at 2; Ex. C at 2.  The letters

further cautioned that Grant Thornton's audit opinions and work papers "were not intended for

the benefit of TH Lee and should not be taken to supplant other inquiries and procedures that TH

---

[4]   In evaluating a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court may
consider documents incorporated by reference in the complaint or relied upon by plaintiffs in
bringing suit.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154-55 (2d Cir. 2002); *Brass v.
Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Lee should undertake for the purpose of satisfying itself about the financial condition of the Company or as to other matters pertinent to the transaction." *Id.*

Strikingly, the Complaint also fails to disclose that these letters informed TH Lee that the financial statements may contain material misinformation caused by fraud—and that Grant Thornton was not assuming any "additional responsibility" by virtue of its having provided information to KPMG as part of TH Lee's due diligence:

> Under US GAAS, we have the responsibility, within the inherent limitations of the auditing process, to plan and perform our audit to obtain reasonable assurance that the consolidated financial statements are free of material misstatements, whether caused by error or fraud, and to exercise due care in the conduct of our audit. The concept of selective testing of the data being audited, which involves judgment both as to the areas to be tested and the nature, timing, and the extent of the tests to be performed, has been generally accepted as a valid and sufficient basis for an auditor to express an opinion on consolidated financial statements. Thus, our audit, based on the concept of selected testing, is subject to the inherent risk that material misstatements, whether caused by error or fraud, if they exist, would not be detected. In addition, an audit does not address the possibility that material misstatements, whether caused by error or fraud, if they exist, may occur in the future. Also, our use of professional judgment and the assessment of materiality for the purpose of our audit means that matters may have existed that would have been assessed differently by TH Lee Partners or KPMG LLP. We and KPMG LLP are authorized to discuss with each other any questions raised during the course of the review, ***but it is expressly understood that Grant Thornton LLP thereby assumes no additional responsibility with respect to its audit of the Company's consolidated financial statements.***

 Braun Decl., Ex. B. at 1; Ex. C at 1 (emphasis added); *see also* Ex. B at 2; Ex. C at 2 (in exchange for receiving access to Grant Thornton's workpapers, TH Lee acknowledges that "Grant Thornton does not assume any duties or obligations in connection with such access"). TH Lee acknowledged its understanding of these conditions as a condition of examining Grant Thornton's work papers. Braun Decl., Ex. B. at 2; Ex. C at 2.

Subject to these express disclaimers, Grant Thornton provided KPMG with access to its workpapers and met with KPMG in February and May 2004. Compl. ¶¶ 69, 71. According to

8

the Complaint, during these meetings Grant Thornton personnel failed to disclose the fraudulent

scheme at Refco.  *Id.* ¶ 71.  TH Lee also alleges that unspecified Grant Thornton personnel

affirmed certain representations contained in the previous audit opinions, specifically (1) that the

audits did not identify any material unusual, extraordinary, and non-recurring income and

expense items during the audited period; (2) that there were no significant issues regarding

Refco's IT control environment; and (3) that there were no outstanding accounting or reporting

issues or disagreements with Refco's management.  *Id.* ¶ 72.  In addition, Mark Ramler of Grant

Thornton allegedly informed KPMG that Grant Thornton had identified Refco's credit risk as a

critical audit area and therefore had focused on the company's customer receivables while

performing its audits.  *Id.* ¶ 73.  Ramler also allegedly told KPMG that Refco held reserves for

material potential losses.  *Id*.

     Although TH Lee's Complaint lists all these allegedly false post-audit oral statements in

general terms in its Complaint, it does not identify the speaker for most of them, and it makes

clear that these statements did not go beyond what was already contained in the audit opinions

and previously audited financial statements.  And as for the statements attributed to Ramler (that

Grant Thornton had focused on credit risk and customers in its audits and that Refco held

reserves for potential losses), TH Lee does not explain how they were false at all, much less

knowingly or negligently so.

     After completing its due diligence, in August 2004 TH Lee acquired a majority of the

equity interest in Refco from RGHI for approximately $452 million.  Compl. ¶¶ 1, 2, 18.  Then,

after the closing, Grant Thornton completed a re-audit of Refco's financial statement for the

fiscal year ending February 28, 2002 in order to comply with SEC Regulation S-X—as

contemplated by the documents executed between TH Lee and Refco entities.  *Id.* ¶¶ 78, 79.

With TH Lee's assistance and participation, Refco later prepared for and completed an initial public offering of stock. Shortly thereafter, and just over a year after TH Lee's limited buy-out, Refco disclosed that it was owed a sizeable, uncollectible receivable from an affiliated entity. *Id.* ¶¶ 83, 84. Following this and other disclosures, Refco's stock price plummeted and the company filed for Chapter 11 bankruptcy protection. *Id.* ¶ 85.

This lawsuit seeks to hold Grant Thornton responsible for TH Lee's lost investment. The Complaint alleges four causes of action. In its claim for aiding and abetting fraud, TH Lee alleges that Grant Thornton knew that Bennett wanted to sell a large equity interest in Refco and that disclosure of the scheme would jeopardize his ability to do so. Compl. ¶ 89. TH Lee thus alleges that Grant Thornton allegedly "knew of, or willfully ignored" the fraud at Refco and aided it by issuing clean and unqualified audit opinions. *Id.* ¶ 90. TH Lee's second claim is for "misrepresentation," which breaks down into two causes of action depending on gradations of intent—fraud and negligence. According to the Complaint, Grant Thornton either knowingly or negligently misrepresented material information regarding Refco's true financial condition. *Id.* ¶ 93. TH Lee does not allege that Grant Thornton owed it a contractual duty or that the parties enjoyed privity of contract.

Lastly, TH Lee alleges professional malpractice. *Id.* ¶¶ 98-106. According to the Complaint, Grant Thornton had a legal obligation to TH Lee—which was never its client—in respect to its audits of Refco. *Id.* ¶¶ 102, 103. TH Lee further avers in conclusory fashion that Grant Thornton had specialized knowledge regarding Refco's financial statements, that Grant Thornton was specifically aware that TH Lee would be relying on the audits, and that TH Lee in fact relied on the audits when it decided to invest. *Id.* ¶¶ 103, 105. TH Lee does not assert any claim based on statements by Grant Thornton that post-date its investment in Refco.

10

## ARGUMENT

### POINT ONE
**The negligence claims must be dismissed because, as a matter of law,
Grant Thornton owed no duty to TH Lee**.

TH Lee's claims for negligence and malpractice must be dismissed because the

Complaint fails to allege a duty owed to TH Lee.  Under New York law, a party cannot recover

in tort for pecuniary loss sustained as a result of a professional's negligence absent privity of

contract between the parties or a relationship so close as to approach that of privity.  *Parrot v.*

*Coopers & Lybrand, LLP*, 95 N.Y.2d 479, 483, 718 N.Y.S.2d 709, 711, 741 N.E.2d 506, 508

(2000).  Here, the Complaint's own allegations make clear that Grant Thornton did not stand in

contractual relationship or "near-privity" with TH Lee.  Grant Thornton's client was Refco, and

its audit opinions were prepared for Refco's benefit in its own business dealings.  And in any

event, Grant Thornton expressly informed TH Lee that the audit opinions were not prepared for

TH Lee's benefit, that TH Lee should not use its audit work as a substitute for its own

independent analysis, and that Grant Thornton was not assuming any additional duties or

obligations by virtue of its discussions with TH Lee before the acquisition.

### A.    Under New York law, accountants are not liable to third parties for negligence absent contractual privity or its equivalent.

In New York, accountants are generally not liable for negligence to non-client third

parties.  New York's restrictive view of auditor liability dates back to Chief Judge Cardozo's

decision in *Ultramares Corporation v. Touche*, 255 N.Y.170, 174 N.E. 441 (1931).  There, the

court rejected a negligence claim against an accounting firm based on financial statements relied

upon by a plaintiff who did not stand in contractual privity with the firm.  The accounting firm

had prepared a certified balance sheet on behalf of its client, with the understanding that its

11

report would be exhibited generally to the business community "according to the needs of the occasion." *Id.* at 174, 174 N.E. at 442. The client in turn gave the balance sheet to a lender, which examined the balance sheet and subsequently executed a loan. *Id.* at 175, 174 N.E. at 443. When the client went bankrupt months later, the lender sued the accounting firm for negligence. *Id.* at 176, 174 N.E. at 443. The court refused to extend liability, concluding that the accountants did not owe the lender a duty. Chief Judge Cardozo explained that imposing liability under such circumstances "may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Id.* at 180, 174 N.E. at 444.

In reaching this conclusion, the court distinguished *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922), another Cardozo opinion issued nine years earlier. In *Glanzer*, a bean seller hired a public weigher to weigh a load of beans. 233 N.Y. at 238, 135 N.E. at 275. Pursuant to the seller's instructions, the weigher measured the beans and provided the prospective buyer a certified figure. *Id.* Relying on that inaccurate figure, the buyer purchased the beans at a financial loss. *Id.* In allowing a negligence claim by the buyer against the weigher, Cardozo noted that the buyer's reliance on the certificate "was not an indirect or collateral consequence" of the weigher's actions. *Id.* Rather, reliance by the buyer "was a consequence which, to the weigher's knowledge, was the end and aim of the transaction." *Id.* at 239, 135 N.E. at 275. Under these circumstances, the weigher assumed a duty to the buyer to weigh the beans carefully. *Id.*, 135 N.E. at 276.

Comparing the two cases, the court in *Ultramares* pointed out that the buyer in *Glanzer* was effectively the known beneficiary of the service provided; the formal promisee seller enjoyed merely an incidental benefit. *Ultramares*, 255 N.Y. at 183, 174 N.E. at 445. In contrast, the audit report in *Ultramares* was prepared primarily for the benefit of the accountant's client—

12

"a convenient instrumentality for use in the development of the business" prepared only "incidentally or collaterally" for those who would see it thereafter. *Id.*

Time and again, New York's highest court has reaffirmed Cardozo's restrictive approach to auditor liability—attaching liability only if there was actual privity of contract between the parties or a relationship so close as to approach that of privity. In *Credit Alliance Corporation v. Arthur Andersen & Company*, the court crafted a three-part analytical framework for determining if a relationship is so close so as to qualify as near-privity. 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985). When determining whether liability can be imposed by a non-privy third party, a court must examine whether (1) the accountant was aware that the reports were to be prepared for a particular purpose; (2) the accountant was aware that a known party would be relying on the reports in furtherance of such a purpose; and (3) there was some conduct linking the accountant to the relying party and evincing the accountant's understanding of that reliance. *Id.* at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118. The court stressed that although these factors permit some flexibility in applying the privity doctrine to accountants, they do not represent a departure from *Ultramares* and "are intended to preserve the wisdom and policy" of that case. *Id.*

B.    **The Complaint fails to satisfy any of the criteria of *Credit Alliance*, and thus the negligence claims against Grant Thornton must be dismissed.**

The principles in *Ultramares* and *Credit Alliance* bar TH Lee's negligence claims as a matter of law. The Complaint fails to satisfy any of the three prongs of the *Credit Alliance* test. It does not demonstrate that Grant Thornton's audit opinions were prepared for the specific purpose of facilitating a leveraged buy-out, that Grant Thornton knew when the audit opinions were prepared that entities associated with TH Lee would rely on the opinions for that purpose,

13

or that Grant Thornton engaged in linking conduct evincing its understanding that TH Lee would rely on its opinions.  To the contrary, when Grant Thornton released the audit opinions at issue here, it was acting simply in its capacity as outside auditor for Refco.  And although representatives of Grant Thornton later responded to TH Lee's requests for information and, in so doing, allegedly reiterated some of the same conclusions that were contained in the previous audit opinions, they did so only after receiving an express acknowledgment from KPMG and TH Lee that Grant Thornton had ***not*** prepared its audit opinions with them or their transaction in mind and was not assuming any additional duties or obligations by responding to their requests.

1. **Grant Thornton did not prepare its audit opinions for the particular purpose of assisting TH Lee's investment decision.**

TH Lee's claims all boil down to the basic allegation that it relied on Grant Thornton's 2003 and 2004 Refco audit work and opinions in deciding to invest in Refco in August 2004. *See, e.g.*, Compl. ¶¶ 2, 11 (suit seeks recovery arising from misrepresentations and omissions "regarding the accuracy and completeness of the Company's financial statements").  Yet there is no allegation that Grant Thornton performed its audits and issued its audit opinions for the particular purpose of facilitating TH Lee's investment.  To the contrary, the Complaint makes clear that Grant Thornton served generally as Refco's outside auditor, issuing audit opinions on its client's yearly financial statements for the benefit of the client in its own business dealings. *See id.* ¶ 17.  TH Lee's Complaint thus fails to meet either of the first two criteria set forth in *Credit Alliance*.  *See* 65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118 (court must examine whether accountant was aware that audit reports were to be prepared for a particular purpose and that a known party would be relying on the reports in furtherance of such a purpose).

14

The New York courts have rejected negligence claims in precisely this situation. The case of *Houbigant, Inc. v. Deloitte & Touche LLP,* for example, involved a negligence suit against the auditor of a cosmetics company. The company had licensed certain trademarks from a trademark owner and had warranted that the owner could terminate the deal if the licensee company failed to maintain a specified minimum net worth. 303 A.D.2d 92, 93, 753 N.Y.S.2d 493, 495 (1st Dep't 2003). Deloitte & Touche served as the auditor for the licensee and supplied audit opinions that affirmed the company's representations regarding its net worth. *Id.* Those figures turned out to be false, and the company was, in fact, insolvent. *Id.* The trademark owner sued Deloitte & Touche for malpractice, but the New York courts rejected that claim, concluding that the alleged relationship between Deloitte and the trademark owner was not a relationship of "near-privity" as required by New York law. *Id.* Although Deloitte knew about the contractual arrangement, its audit task was "one performed pursuant to professional standards applicable in the context of any audit, and was not undertaken pursuant to any duty owed toward [the trademark owner]." *Id.* at 95, 753 N.Y.S.2d at 495.

Here too, Plaintiffs' negligence claims are based on audit opinions that were issued to the client for its own general use in the business community—not for use in any particular transaction or by TH Lee as a particular business partner. Grant Thornton's auditing work for Refco began in March 2003 (*id.* ¶ 29), which long predated TH Lee's bid for the company. And in general, the firm's obligations in respect to its audits were no different than those it would have to any audit client under the governing professional standards. Compl. ¶ 5 (Grant Thornton "was tasked – both specifically with respect to its Refco engagement and more generally with respect to its obligations as an auditing professional –with examining and attesting to the accuracy and completeness of the Company's financial statements and disclosures"); *see Sec.*

15

*Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*, 586 N.Y.S.2d 87, 93, 597 N.E.2d 1080, 1086, 79 N.Y.2d 695, 706-07 (1992) (declining to extend negligence liability to accountant retained for purpose of preparing general audit reports).

To be sure, TH Lee does allege that Grant Thornton knew about TH Lee's interest in Refco when it issued its audit opinion on Refco's financial statements for fiscal year 2004. *Id.* ¶ 69. But mere awareness of a potential transaction, or even knowledge of actual reliance, does not establish a relationship approaching privity when the work was performed for a different purpose and would have been performed regardless of that potential reliance. *Houbigant*, 303 A.D.2d at 94, 753 N.Y.S.2d at 495 (requisite linking conduct is not established by licensor's contractual entitlement to receive the audited financial statements, by the auditor's consent in forwarding the financial statements, or by auditor's awareness that licensor would rely on information contained in financial statements). Moreover, Grant Thornton expressly warned TH Lee that its audits were ***not*** planned or conducted in contemplation of the proposed transaction and that TH Lee was ***not*** their intended beneficiary. Braun Decl., Exs. B, C. Thus not only has TH Lee failed to allege that Grant Thornton audited Refco for the specific purpose of facilitating TH Lee's investment, but the access letters it cites in its Complaint demonstrate just the opposite. TH Lee's examination of the audit opinions and related materials after they were issued was an incidental consequence indistinguishable from those at issue in *Ultramares* and *Houbigant*.[5]

---

[5]    Although TH Lee also alleges that it relied on Refco's financial statements for 2002 and earlier, Grant Thornton did not audit those financial statements, and TH Lee does not allege that Grant Thornton or its personnel made any specific statements about the 2002 financials at any time before the TH Lee acquisition closed. Grant Thornton's "re-audit" opinion on the 2002 financial statements was not completed until ***after*** the closing with TH Lee, so TH Lee's investment decision could not have been in reliance on that information. *See also infra* at 18-19 (explaining why 2002 re-audit also does not qualify as "linking conduct" under the third *Credit Alliance* factor).

16

### 2.    TH Lee also fails to allege conduct by Grant Thornton linking it to TH Lee and evincing its understanding of TH Lee's reliance.

The Complaint also fails to allege "linking conduct" by Grant Thornton to establish a relationship approaching privity.  TH Lee alleges three basic facts in an attempt to establish linkage:  (1) Grant Thornton's responses to TH Lee and KPMG's requests for information about its previous audits; (2) Grant Thornton's performance of certain work related to the transaction itself; and (3) Grant Thornton's re-audit of Refco's 2002 fiscal year financial statements.  As discussed below, none of this conduct—taken separately or collectively—is sufficient to confer near-privity under New York law.

First, TH Lee focuses on Grant Thornton's agreement to share its workpapers with KPMG and its meetings with KPMG personnel to discuss the audit opinions issued for Refco's financial statements for fiscal years 2003 and 2004.  But as discussed above, this exchange of information occurred only *after* TH Lee acknowledged that Grant Thornton would assume no additional duties or obligations as a result of its agreement to comply with TH Lee's requests. *See* Braun Decl., Exs. B, C.  Thus in sharing information with KPMG, Grant Thornton did not affirmatively *assume* a duty; it *expressly disavowed* one.  All the alleged statements at those meetings—concerning what the 2003 and 2004 audits did or did not reveal, whether they led to outstanding disagreements with management, the extent to which the audits focused on credit risk and receivables from customers, and the existence of reserves for material potential losses (Compl. ¶¶ 72-74)—related to the 2003 and 2004 audits and fell well within the scope of the access letters.  Thus TH Lee and KPMG received all this information based on their agreement and express understanding that Grant Thornton's audit opinions and work papers "were not intended for the benefit of TH Lee and should not be taken to supplant other inquiries and

17

procedures that TH Lee should undertake for the purpose of satisfying itself about the financial condition of the Company or as to other matters pertinent to the transaction." *See* Braun Decl., Ex. B at 2; Ex. C. at 2. TH Lee cannot assert a relationship of near-privity based on this exchange of information when such a nexus is belied by the very agreement under which it received the information in the first place.

Second, although the Complaint alleges that Grant Thornton performed certain work in connection with the TH Lee transaction itself, there is no reason to believe that such work evidenced an intention by Grant Thornton that TH Lee would rely on its 2003 and 2004 audit opinions or on any statements about those opinions. *See* Compl. ¶ 76. According to the Complaint, by July 2004 Grant Thornton had billed Refco $1.2 million for various services relating to the potential August 2004 investment. *Id.* But TH Lee is not complaining about Grant Thornton's work on the transaction itself; instead, it assails Grant Thornton's audit opinions for the years preceding the transaction. Under *Credit Alliance*, the alleged linking conduct must demonstrate the defendant's awareness of the plaintiff's reliance on the misrepresentation or omission that forms the basis of the claim. 65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118 (tying auditor's knowledge of reliance to the inaccurate financial statement at issue in the case). There is no such allegation here.

The third and final example of supposed "linking conduct" relates to Grant Thornton's re-audit of the 2002 financial statements. But this argument is a complete nonstarter, as Grant Thornton's audit opinion for the 2002 financial statements was issued ***after*** TH Lee made its investment. Compl. ¶¶ 1, 78. No matter what Grant Thornton knew about the role of the 2002 re-audit in TH Lee's purchase, the 2002 audit opinion was issued after the fact and by definition could not have induced TH Lee to participate in the transaction several months earlier. Again, it

18

is TH Lee's decision to invest in August 2004 that is centerpiece of the lawsuit. *See, e.g.*, *id.* ¶ 1 (alleging that Grant Thornton's improper conduct "induced the TH Lee Funds to invest more than $450 million in Refco Group, Ltd. LLC, the predecessor of the public company, in August 2004."). Thus these allegations too are inadequate to create privity or near-privity for purposes of a negligence claim.

In sum, Plaintiffs have failed to allege that TH Lee was in privity or near-privity with Grant Thornton. They have not alleged that Grant Thornton issued its 2003 and 2004 audit opinions with the knowledge that they would be used by TH Lee for purposes of a corporate transaction, and they have not alleged any "linking conduct" that evidences such knowledge. To the contrary, in correspondence quoted (selectively) in the Complaint, Grant Thornton expressly disavowed any separate duty to TH Lee, and TH Lee acknowledged that fact as a condition to receiving access to Grant Thornton's workpapers. Under these circumstances, *Credit Alliance* bars TH Lee's negligence claims as a matter of law.

## POINT TWO
**The claim for aiding and abetting must be dismissed because the Complaint does not allege that Grant Thornton actually knew about the fraud that it supposedly aided.**

Aiding and abetting liability depends on three elements: (1) the commission of a wrongful act by a third party; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000); *VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP*, 348 F. Supp. 2d 255, 269 (S.D.N.Y. 2004). As the Restatement explains, a defendant is liable for harm resulting to a third person from the conduct of another only when that defendant "***knows*** that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." RESTATEMENT (SECOND) OF TORTS § 876(b)

(1979) (emphasis added); *Miele v. Am. Tobacco Co.*, 2 A.D.3d 799, 805, 770 N.Y.S.2d 386, 392 (2d Dep't 2003).

Accordingly, to state a claim for aiding and abetting, the plaintiff must allege facts sufficient to support an inference that the defendant had actual knowledge of the underlying fraud. *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246-47 (S.D.N.Y. 1996) ("general suspicion" of fraud is not enough to meet the requirement of knowledge); *see also Krause v. Forex Exch. Market, Inc.*, 356 F. Supp. 2d 332, 339 (S.D.N.Y. 2005) (plaintiff must allege factual basis for aider-abettor's knowledge); *Kaufman v. Cohen*, 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (1st Dep't 2003) (aiding and abetting liability requires actual knowledge).

Despite its factual complexity, the Complaint in this case carefully avoids the allegation that Grant Thornton had ***actual knowledge*** of the fraud at Refco at any time—much less before the TH Lee investment.  While the Complaint purports to plead that Grant Thornton was negligent and even reckless in failing to discover the truth, it does not plead that Grant Thornton did, in fact, discover it.  *See, e.g.*, Compl. ¶ 5 (alleging that if Grant Thornton's audit had been different, "it undoubtedly would have uncovered Bennett's fraudulent scheme.  Grant Thornton, however, did no such thing."); *id.* ¶ 6 (claim is based on Grant Thornton's alleged "failure to uncover and/or disclose the ongoing fraud"); *id* ¶ 9, (alleging knowledge and "conscious disregard" of certain transactions that were components of the fraud, as well as a "grossly negligent failure to implement adequate audit procedures for detecting and identifying" the fraud); *id.* ¶ 40 (suggesting that Grant Thornton had access to Refco documents "from which the fraudulent scheme was, or , . . . should have been, evident or detectible"); *id.* ¶ 59 (alleging that Grant Thornton "could not merely take the word of the Company's management about the accuracy" of its financial statements and "plainly failed in this regard").  This is no surprise,

20

given that the scheme alleged against Bennett and others in the pending indictment makes clear that one central goal of the scheme was to keep Grant Thornton in the dark. *See supra* at 4. At most, TH Lee alleges that Grant Thornton's conduct was performed "knowingly and/or with gross negligence" in respect to the fraud at Refco. *Id.* ¶¶ 95, 104; *accord id.* ¶ 11; *id.* ¶ 76 ("knew, or was grossly negligent in not knowing"); *id.* ¶ 90 (aiding and abetting count is based on allegation that "Grant Thornton consciously avoided confirming facts or implementing procedures that would have revealed the fraud" and "knew of, *or* willfully ignored, the fraudulent conduct") (emphasis added).[6] But in the context of aiding and abetting, the distinction between "knowing" and "grossly negligent" makes all the difference. One cannot negligently aid and abet the tort of another. Regardless of whether allegations like these are sufficient to raise an issue for trial with regard to a defendant's recklessness or negligence, they are not sufficient to show actual knowledge for purposes of an aiding and abetting claim.

A defendant cannot be held liable for aiding and abetting a fraud he did not know about. Plaintiffs' allegations do not support the inference that Grant Thornton was actually aware of the truth; to the contrary, they rest largely on the assertion that the alleged inadequacy of the audit meant that Grant Thornton failed to discover it. Thus, Plaintiffs cannot possibly establish the elements of aiding and abetting. This claim, then, must also be dismissed.

---

[6]   The Complaint includes Plaintiffs' speculation about a vague handwritten note that—according to Plaintiffs—refers to an end-of-period loan from May 2005 that was part of the "round trip" series of loans. Compl. ¶ 54. Of course, even if Plaintiffs' unfounded speculation about this document were correct, it could not possibly support any conclusion about what Grant Thornton knew at the time of TH Lee's investment nine months earlier.

## POINT THREE
### TH Lee's claims cannot be sustained because the facts alleged
### cannot support a finding of justifiable reliance as required under New York law.

Separate and apart from the *Credit Alliance* doctrine, all of TH Lee's claims must be

dismissed because of its failure to allege—and inability to prove—the element of justifiable

reliance.  TH Lee is among the oldest and most successful private equity firms in the country.  It

employed professionals in various specialties to perform detailed due diligence over a period of

ten months before agreeing to invest more than $450 million in Refco.  TH Lee undertook this

due diligence and the investment itself with particular investment objectives of its own in

mind—though there is no allegation that Grant Thornton was informed of these objectives or had

any reason to know what information TH Lee would consider important.[7]  Moreover, as

discussed above, Grant Thornton responded to TH Lee's requests for information about its

previous audits only on the condition that it would not assume any additional duties or

obligations over and above what it already owed in connection with its 2003 and 2004 audit

work for Refco—and with TH Lee's acknowledgement that the audit opinions did not and could

not guarantee the absence of fraud.  *See supra* at 7-8.  In light of these undisputed facts, the

Complaint does not adequately plead that TH Lee justifiably relied on Grant Thornton's

statements or audit work in this context or that those statements "caused" TH Lee's investment.

---

[7]  Depending on TH Lee's investment objectives, information about Refco's past practices for accounting for customer trading losses might or might not have been material to its decision to invest.  Indeed, the Refco Examiner's Report indicates that one of TH Lee's advisors received a tip before the investment that Refco had been "sloughing off" trading losses into a subsidiary whose financial statements were not consolidated with Refco's.  Examiner's Report at 293-94. Yet TH Lee proceeded with the investment anyway.

*See Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (to survive a motion to dismiss, complaint must plead facts sufficient to establish that a grant of relief is a plausible possibility).

Justifiable reliance is an element of all of TH Lee's claims.  TH Lee advances two fraud-based claims—aiding and abetting fraud and intentional/fraudulent misrepresentation.  To recover for fraud under New York law, a plaintiff must demonstrate (1) a knowing factual misrepresentation; (2) the statement was made for the purpose of inducing reliance; (3) justifiable reliance; and (4) resulting injury.  *E.g., Ambassador Factors v. Kandel & Co.*, 215 A.D.2d 305, 307, 626 N.Y.S.2d 803, 805 (1st Dep't 1995); *Ruse v. Inta-Boro Two-Way Radio Taxi Assocs.*, 166 A.D.2d 641, 641, 561 N.Y.S.2d 70, 70 (2d Dep't 1990).  Similarly, to recover on a theory of negligent misrepresentation, a plaintiff must establish that the defendant had a duty to use reasonable care to impart correct information because of some special relationship between the parties, that the information was incorrect or false, and that the plaintiff reasonably relied upon the information provided and suffered harm as a result.  *See, e.g.*, *Grammer v. Turits*, 271 A.D.2d 644, 645, 706 N.Y.S.2d 453, 455 (2d Dep't 2000).  Reasonable reliance must also be established before a plaintiff can prevail on a claim of professional malpractice predicated on fraudulent or negligent misrepresentations.  *See Busino v. Meachem*, 270 A.D.2d 606, 608-09, 704 N.Y.S.2d 690, 693-94 (3d Dep't 2000).

In recognition of this basic requirement, TH Lee avers generally that it "reasonably and in good faith relied on Grant Thornton's direct representations regarding the accuracy of Refco's financial statements, the procedures Grant Thornton employed and the conclusions it reached during the course of its audits."  Compl. ¶ 77.  The Complaint further asserts that TH Lee "believed the information directly provided by Grant Thornton to be true and acted reasonably and justifiably in reliance thereon by investing in Refco."  *Id.* ¶ 96.

The access letters and other factual allegations disprove these conclusory statements.  TH Lee and KPMG—both highly sophisticated professional firms engaged in extensive due diligence over a period of ten months—reviewed Grant Thornton's previous audit work subject to their acknowledgment that the work was not performed with their interests or objectives in mind and that it did not and could not ensure against material misstatements due to fraud.  *See supra* at 7-8.  Again, as demonstrated by these letters, TH Lee understood and acknowledged that

- Grant Thornton's audits were not intended for the benefit of TH Lee and should not be taken to supplant other inquiries and procedures that TH Lee should undertake for the purpose of satisfying itself about Refco's financial condition or as to other pertinent matters;

- the audits did not address the possibility that material misstatements, whether caused by error or fraud, may occur in the future; and

- Grant Thornton's use of professional judgment and its assessment of materiality for the purpose of its  audits meant that matters may have existed that would have been assessed differently by TH Lee Partners or KPMG.

Braun Decl., Exs. B, C.  Under the circumstances, these letters (and TH Lee's acknowledgment of their conditions) show that TH Lee could not have justifiably relied upon Grant Thornton's past audits in making its decision to invest more than $450 million.  Indeed, TH Lee's extensive due diligence process was designed to give TH Lee its own view of the risk it would incur if it proceeded with the Refco transaction, relative to the investment objectives it hoped to serve.  Under these circumstances, the requirement of justifiable reliance cannot be satisfied.  All the claims in the Complaint must be dismissed on this basis as well.

## **CONCLUSION**

For all the reasons discussed above, the TH Lee Plaintiffs' claims against Grant Thornton

should be dismissed in their entirety.


Dated: November 5, 2007                              Respectfully submitted,
       New York, New York


                                    By:  _____/s/_____

                                         David E. Mollón (DM-5624)
                                         WINSTON & STRAWN LLP
                                         200 Park Avenue
                                         New York, NY 10166-4193

*Of Counsel:*
Margaret Maxwell Zagel                   Bradley E. Lerman
Kenneth Cunningham                       Catherine W. Joyce
GRANT THORNTON LLP                       Linda T. Coberly
175 West Jackson, 20th Floor             WINSTON & STRAWN LLP
Chicago, Illinois 60604                  35 W. Wacker Drive
Ph: 312-856-0001                         Chicago, Illinois 60601
Fax: 312-565-347                         Ph: 312-558-5600
                                         Fax: 312-558-5700