UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
THOMAS H. LEE EQUITY FUND V, L.P.,      :
THOMAS H. LEE PARALLEL FUND V, L.P.,     :
and THOMAS H. LEE EQUITY (CAYMAN)      :
FUND V, L.P.      :
     :
                       Plaintiffs,      :
     :
                       vs.      :
     :
GRANT THORNTON LLP,      :
     :
                       Defendant.      :
------------------------------------------------------------ x

ELECTRONICALLY FILED

07 Civ. 8663 (GEL)
Hon. Gerard E. Lynch

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# GRANT THORNTON LLP'S MOTION TO DISMISS THE COMPLAINT

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

*Attorneys for Defendant*
*Grant Thornton LLP*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I.  Plaintiffs misapprehend the legal significance of the access letters ...................................2

II. In the face of New York's limitation on negligence claims against auditors,
    Plaintiffs have disavowed any claims based on simple negligence ...................................4

    A.  Plaintiffs fail to allege that Grant Thornton's audit work was prepared
        for the particular purpose of facilitating TH Lee's leveraged buy-out ...................5

    B.  Plaintiffs cannot demonstrate knowledge of TH Lee's reliance .............................7

    C.  The complaint fails to allege linking conduct evincing Grant Thornton's
        understanding of TH Lee's reliance .......................................................................8

III. This Court should dismiss the claims for aiding and abetting fraud because
     Plaintiffs do not allege facts sufficient to demonstrate a strong inference of
     actual knowledge or conscious disregard .........................................................................10

IV. Plaintiffs cannot establish justifiable reliance...................................................................13

CONCLUSION ..............................................................................................................................15

## **TABLE OF AUTHORITIES**

**CASES**                                                     **PAGE(S)**

*Abramowitz v. New York Univ. Dental Ctr.*,
    110 A.D.2d 343, 494 N.Y.S.2d 721 (2d Dep't 1985) ......................................................... 3, 4

*Bell Atlantic v. Twombly*,
    127 S. Ct. 1955 (2007) ......................................................................................................... 14

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir. 1993) .................................................................................................. 2

*Caprer v. Nusbaum*,
    36 A.D.3d 176, 825 N.Y.S.2d 55 (2d Dep't 2006) ................................................................ 4

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) .................................................................................................. 2

*Cherry v. Joseph S. Herbert & Co.*,
    212 A.D.2d 203, 627 N.Y.S.2d 679 (1st Dep't 1995) ............................................................ 9

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
    65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985) ........................................ *passim*

*Fed. Nat'l Mortgage Ass'n v. Olympia Mortgage Corp.*,
    No. 04 CV 4971, 2006 WL 2802092 (E.D.N.Y. Sept. 28, 2006) ........................................... 9

*Fernandez v. DeLeno*,
    71 F. Supp. 2d 224 (S.D.N.Y. 1999) ..................................................................................... 4

*Glidepath Holding B.V. v. Spherion Corp.*,
    No. 04 Civ. 9758, 2007 WL 2176072 (S.D.N.Y. July 26, 2007) ......................................... 12

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
    58 F. Supp. 2d 228 (S.D.N.Y. 1999) ................................................................................... 14

*Houbigant, Inc. v. Deloitte & Touche LLP*,
    303 A.D.2d 92, 753 N.Y.S.2d 493 (1st Dep't 2003) ..................................................... 5, 6, 8

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ................................................................................... 6

*John Blair Commc'ns, Inc. v. Reliance Capital Group, L.P.*,
    157 A.D.2d 490, 549 N.Y.S.2d 678 (1st Dep't 1990) ............................................................ 9

*Kalisch-Jarcho, Inc. v. City of New York*,
   58 N.Y.2d 377, 461 N.Y.S.2d 746, 448 N.E.2d 413 (1983) ................................................... 4

*Manning v. Utils. Mutual Ins. Co.*,
   254 F.3d 387 (2d Cir. 2001) ................................................................................................. 14

*Mills v. Molecular Polar Corp.*,
   12 F.3d 1170 (2d Cir. 1993) ................................................................................................... 6

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ................................................................................................. 12

*Orlando v. Kukielka*,
   40 A.D.3d 829, 836 N.Y.S.2d 252 (2d Dep't 2007) ............................................................. 14

*Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*,
   79 N.Y.2d 695, 586 N.Y.S.2d 87, 597 N.E.2d 1080 (1992) ............................................... 5, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007) ......................................................................................................... 12

*Ultramares Corp. v. Touche*,
   255 N.Y. 170, 174 N.E. 441 (1931) ............................................................................... 4, 6, 8

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................................................ 6, 12

**PRELIMINARY STATEMENT**

The TH Lee Plaintiffs are correct on one important point: the access letters between the parties *are* critical to many of the arguments in the pending motion. These letters represent the parties' mutual understanding that Grant Thornton had not planned or conducted its audit work with TH Lee or TH Lee's transaction in mind and that Grant Thornton did not intend its audit opinions to be for TH Lee's benefit or to supplant TH Lee's own due diligence. Yet Plaintiffs misconstrue the significance of these letters. Grant Thornton does not contend that they constitute promises not to sue or waivers of liability. Rather, the letters make clear both that Grant Thornton did not owe a duty to TH Lee and that Plaintiffs cannot prove other elements of their claims.

In the face of these letters, Plaintiffs now disavow any claims based on simple negligence. Indeed, under New York's *Credit Alliance* doctrine, a negligence claim could not succeed here. Plaintiffs cite no case in which an auditor was held liable in negligence based on access provided to a potential investor through the customary "access letters" used in due diligence. Grant Thornton prepared its audit opinions for the benefit of its client Refco, which was then a private company. Those opinions were not prepared for the purpose of assisting TH Lee's decision to invest, and there is no "linking conduct" here showing that Grant Thornton understood and intended that TH Lee would rely on its opinions and other information, either when it performed the audits or afterward. Thus there can be no negligence claims here.

Having abandoned their simple negligence claims, Plaintiffs focus on alleged intentional malfeasance or "gross" negligence. But these claims fare no better. Plaintiffs do not allege that Grant Thornton actually knew about the fraud it supposedly aided and abetted, nor do they allege facts sufficient to support a strong inference of knowledge.

Moreover, Plaintiffs fail to allege the necessary element of justifiable reliance. Their central argument is that Grant Thornton provided information about matters that were "peculiarly within Grant Thornton's knowledge" and for which Plaintiffs had no independent means of ascertaining the truth. Pl. Mem. 29. Yet Plaintiffs ignore the fact that they had retained their *own* accounting and auditing firm (along with other specialists) to conduct due diligence and analyze Refco's affairs in great depth over a lengthy period. Given that Grant Thornton **had not** analyzed Refco's affairs on TH Lee's behalf or with its transaction in mind—and that KPMG **had**—Plaintiffs cannot establish justifiable reliance. That defect dooms all their claims.

## ARGUMENT

I.  **Plaintiffs misapprehend the legal significance of the access letters.**

The opening salvo in Plaintiffs' brief is based on a misconception. According to Plaintiffs, Grant Thornton is mistakenly relying on the access letters "to absolve itself of any and all liability." Pl. Mem. 11. Plaintiffs' argument is flawed on many levels.

As an initial matter, it was Plaintiffs themselves who introduced the access letters into this dispute by quoting them (selectively) in their complaint. *See, e.g.*, Compl. ¶ 70 (quoting access letters for the proposition that "Grant Thornton knew that the THL Funds and their affiliates and advisors were relying on Grant Thornton's representations in determining whether to proceed with the August 2004 Acquisition"). A careful review of the documents themselves, however, shows that they are insufficient to support Plaintiffs' claims and actually undermine them. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154-55 (2d Cir. 2002) (on motion to dismiss, court may consider complete text of documents quoted or incorporated in a pleading); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (same effect).

Grant Thornton is not arguing that these access letters are agreements not to sue or express waivers of liability. Instead, these letters established the conditions for TH Lee's receipt of information from Grant Thornton and defined clear limitations for Grant Thornton's contacts with TH Lee's audit firm, KPMG. Those contacts are central to TH Lee's contention that it stood in a relationship of near-privity with Grant Thornton and justifiably relied on its audit opinions and other representations in deciding to invest. The portions of the letters that Plaintiffs omitted from their complaint in fact ***negate*** the existence of a duty to TH Lee and fatally impair their claim of justifiable reliance. The letters express the parties' mutual understanding that Grant Thornton did not prepare its audit opinions for the benefit of TH Lee, did not prepare those opinions with the intention that TH Lee would rely on them in connection with the potential leveraged buy-out, did not assume any additional obligations by acquiescing to TH Lee's and KPMG's requests for information, and did not guarantee the absence of fraud or mistake, either in the past or in the future.

Plaintiffs' reliance on *Abramowitz v. New York Universal Dental Center*, 110 A.D.2d 343, 494 N.Y.S.2d 721 (2d Dep't 1985), is misplaced. *Abramowitz* evaluated the legal impact of a medical release signed by a dental patient, later introduced by the defendant dentist to support an affirmative defense that the patient had waived any claim for negligence. *Id.* at 344-45, 494 N.Y.S.2d at 722. The appellate division concluded that the release did not apply to negligence claims because it did not include the word "negligence." *Id.* at 347, 494 N.Y.S.2d at 724. *Abramowitz* is of no consequence here. As discussed above, Grant Thornton is relying on the access letters, not as express waivers of liability, but instead as undisputed evidence cited in the complaint that demonstrates the legal insufficiency of Plaintiffs' causes of action.

3

For the same reason, Plaintiffs' position does not benefit from the case law concerning releases for grossly negligent or willful conduct. *See* Pl. Mem. 14-15 (citing, *e.g.*, *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384-85, 461 N.Y.S.2d 746, 749-50, 448 N.E.2d 413, 416-17 (1983)). Like *Abramowitz*, these cases evaluate the enforceability of exculpatory clauses. Again, Grant Thornton is not claiming that its access letters are *releases*. Instead, they are simply undisputable facts that defeat Plaintiffs' claims on their merits.

**II.    In the face of New York's limitation on negligence claims against auditors, Plaintiffs have disavowed any claims based on simple negligence.**

As the opening brief demonstrates, New York law bars any negligence claim against Grant Thornton by these Plaintiffs. GT Mem. 11-19 (discussing *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), and *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985)). Implicitly recognizing this point, Plaintiffs state in their brief that they are not asserting claims based on simple negligence after all: "The Complaint does not require allegations of privity because Plaintiffs' claims of misrepresentation and professional malpractice sound in intentional misconduct and ***gross* negligence** (*see* Compl. ¶¶ 95, 104) – ***not*** in simple negligence, as Grant Thornton argues." Pl. Mem. 21 (emphasis in original); *see also id.* at 15 ("The Complaint makes clear that each of Plaintiffs' claims sound in intentional misconduct and or gross negligence"). Thus Plaintiffs have disavowed any claims other than those based on willful misconduct. *Caprer v. Nusbaum*, 36 A.D.3d 176, 195, 825 N.Y.S.2d 55, 72 (2d Dep't 2006) (describing gross negligence as the "functional equivalent" of intentional misrepresentation); *see Fernandez v. DeLeno*, 71 F. Supp. 2d 224, 231 (S.D.N.Y. 1999) (dismissing claims withdrawn in opposition to motion to dismiss).

Moreover, as discussed below, the limited answer Plaintiffs do offer on the *Credit Alliance* issue is unpersuasive and would be insufficient to save their negligence claims in any

4

event.  Plaintiffs cannot avoid three simple facts:  Grant Thornton did not prepare the audit opinions for the specific purpose of facilitating the leveraged buy-out; it did not know and intend during the relevant audits that TH Lee would be relying on them for that purpose; and it did not engage in "linking conduct" evincing its understanding that TH Lee would rely on its audit work.  Given these facts—all of which are established by the complaint itself and the documents they cite—Plaintiffs cannot establish negligent representation or negligence-based malpractice.

### A. Plaintiffs fail to allege that Grant Thornton's audit work was prepared for the particular purpose of facilitating TH Lee's leveraged buy-out.

As Grant Thornton explained in its opening brief, Plaintiffs cannot satisfy the first prong of *Credit Alliance* because they do not allege that Grant Thornton prepared its audit opinions for the purpose of facilitating the leveraged buy-out.  65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118.  Indeed, the complaint makes clear that Grant Thornton issued its audit opinions simply in its capacity as Refco's outside auditor for Refco's general use in the business community.  *See* Compl. ¶ 17.  As a matter of New York law, TH Lee cannot establish a duty under these circumstances.

Plaintiffs do not credibly refute this point.  Instead, they assert that Grant Thornton "knew that its audit opinions and representations were being provided to Plaintiffs specifically in connection with their consideration of an investment in Refco."  Pl. Mem. 23.  This is insufficient under *Credit Alliance*, which requires the work itself to be undertaken for the specific purpose of facilitating the transaction at issue in the lawsuit.  65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118; *see also Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*, 79 N.Y.2d 695, 706-07, 586 N.Y.S.2d 87, 93, 597 N.E.2d 1080, 1086 (1992) (no negligence liability to third party where accountant was retained for purpose of preparing general audit reports); *Houbigant, Inc. v. Deloitte & Touche LLP*, 303 A.D.2d 92, 95, 753 N.Y.S.2d 493, 495

5

(1st Dep't 2003) (auditor had no duty to third party where audit was "performed pursuant to professional standards applicable in the context of any audit").  Here too, the audit opinions were prepared for use by Refco for its use in the business community and are indistinguishable from the balance sheets prepared in *Ultramares* or the audit opinions prepared in *Peat Marwick* and *Houbigant*.  *See* GT Mem. 11-13, 15-16.  Moreover, Grant Thornton expressly warned TH Lee that its audits were *not* planned or conducted in contemplation of the proposed transaction and that TH Lee was *not* their intended beneficiary.  *See* Braun Decl., Exs. B, C.  Thus the evidence Plaintiffs cite in their complaint defeats any claims for negligence based on Grant Thornton's audit work and opinions.

Plaintiffs cannot avoid this problem by focusing on a "failure to disclose" by Grant Thornton personnel in their discussions with KPMG during due diligence—or on statements made by unspecified personnel about the audit work that had been performed.  Pl. Mem. 24.  Under Rule 9(b), Plaintiffs obviously cannot state a claim for misrepresentation based on statements made by unspecified people.  *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003) (Rule 9(b) requires that the pleadings set forth the alleged fraud with particularity, including "the who, what, when, where, and how [of the fraud]"); *see also Mills v. Molecular Polar Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (Rule 9(b) requires plaintiffs to identify who made the alleged misrepresentations and specify where and when they were made).[1]

---

[1] Grant Thornton's opening brief pointed out that while the complaint listed certain post-audit statements, it did not identify the speaker for most of them, and it made clear that these statements did not go beyond what was already contained in the audit opinions and previously audited financial statements.  Grant Thornton also discussed the statements attributed to auditor Mark Ramler, noting that TH Lee had not explained how those statements were false at all, much less knowingly or negligently so.  GT Mem. 9.  Plaintiffs' brief does not provide the missing explanation or identify the missing speakers, and it does not claim that any statements made in the meetings with KPMG are themselves independent bases for a claim of fraud properly alleged under Rule 9(b).  Instead, it argues only that Ramler and others "failed to disclose" the falsity of their previous audit opinions and representations.  Pl. Mem. 9-10.

6

Moreover, these conversations occurred only in the context of the access provided under the access letters—and only after TH Lee acknowledged its express understanding that Grant Thornton's audit work and work papers "were not intended for the benefit of TH Lee" and should not supplant its own due diligence. Braun Decl., Ex. B at 2; Ex C at 2.

Finally, Plaintiffs also cannot state a claim for negligence based on Grant Thornton's re-audit of Refco's 2002 financial statements. They contend that this re-audit was specifically for the purpose of facilitating TH Lee's investment and was a condition of the transaction's closing. Pl. Mem. 24. But this ignores the fact that the re-audit was issued *after the transaction closed*. Compl. ¶¶ 1, 78-79. By definition, then, Grant Thornton's statements in connection with the re-audit could not have induced the investment decision. *See id.* ¶ 1 (claims are based on the notion that Grant Thornton "induced the TH Lee Funds to invest more than $450 million in Refco Group, Ltd., LLC, the predecessor of the public company, in August 2004"). Whether Grant Thornton undertook the re-audit with TH Lee specifically in mind does not matter if the re-audit is not one of the alleged misrepresentations on which TH Lee supposedly relied.

**B.    Plaintiffs cannot demonstrate knowledge of TH Lee's reliance.**

Plaintiffs also cannot satisfy *Credit Alliance*'s second requirement, as they cannot show that Grant Thornton was aware that a known party would be relying on its work and audit opinions for a specific purpose. According to Plaintiffs, this requirement is satisfied because Grant Thornton knew that its audit opinions and representations "were central to Plaintiffs' investment decision." Pl. Mem. 24. But again, the only facts they invoke in support of that conclusion—the access letters and Grant Thornton's sharing information with KPMG about its audits—also demonstrate TH Lee's express understanding that the audits were not planned or conducted in contemplation of its proposed transaction, were not intended for its benefit, and

7

should not supplant its own due diligence. *See* Braun Decl., Ex. B at 2, Ex. C at 2. Indeed, the access letters further cautioned that Grant Thornton's "use of professional judgment and the assessment of materiality for the purpose of our audit means that matters may have existed that would have been assessed differently by TH Lee Partners or KPMG LLP." *Id.*

Plaintiffs contend that Grant Thornton's eventual awareness of TH Lee's interest in purchasing Refco makes this case distinguishable from *Ultramares*. Pl. Mem. 25-26. Not so. In *Ultramares*, Justice Cardozo voiced concern about extending liability to an indeterminate class who might someday rely on an auditor's work for its client. When Grant Thornton was retained by Refco and performed its audit work, TH Lee was part of just such an indeterminate class. And once Grant Thornton learned of TH Lee and a possible transaction, it made clear to TH Lee that the audits were not performed for its benefit and should not supplant its own due diligence.

Further, Plaintiffs' efforts in distinguishing *Houbigant* are completely off the mark. The court in *Houbigant* simply noted in the context of the third "linking" factor of *Credit Alliance* that a non-client plaintiff must demonstrate some conduct by the accountant directed to the plaintiff. 303 A.D.2d at 94, 753 N.Y.S.2d at 494. The court did not hold that an accountant has a duty to every known recipient of its audit work. To the contrary, the auditor in *Houbigant* actually knew about the third party plaintiff's potential reliance during its audit and even expressly consented to the disclosure of its audit work to the plaintiff. Nevertheless, the court concluded that there was no duty as a matter of New York law. The same is true here.

**C.     The complaint fails to allege linking conduct evincing Grant Thornton's understanding of TH Lee's reliance.**

Finally, as the access letters demonstrate, Grant Thornton's discussions with KPMG do not evince any understanding that TH Lee would be relying on Grant Thornton's work. *Credit Alliance*, 65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118 ("[T]here must have been

some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance."). And as Grant Thornton pointed out in its opening brief, its exchanges with KPMG occurred only after TH Lee acknowledged that Grant Thornton was assuming no additional duties or obligations in sharing its work papers with TH Lee. Thus, the letters that governed TH Lee's access to Grant Thornton's work expressly ***disclaim*** any understanding of a duty to or reliance by TH Lee.

TH Lee cites four cases in support of its "linking" argument, but all are easily distinguished. *See* Pl. Mem. 26-27 (citing *Credit Alliance*, 65 N.Y.2d at 554, 493 N.Y.S.2d at 445, 483 N.E.2d at 120; *Cherry v. Joseph S. Herbert & Co.*, 212 A.D.2d 203, 208, 627 N.Y.S.2d 679, 682-83 (1st Dep't 1995); *John Blair Commc'ns, Inc. v. Reliance Capital Group, L.P.*, 157 A.D.2d 490, 491, 549 N.Y.S.2d 678, 680 (1st Dep't 1990); and *Fed. Nat'l Mortgage Ass'n v. Olympia Mortgage Corp.*, No. 04 CV 4971, 2006 WL 2802092, at *11 (E.D.N.Y. Sept. 28, 2006)). None of these cases held that communications between the parties is alone sufficient to show "linking" conduct. Instead, *Credit Alliance* and its progeny require conduct that evinces an understanding of reliance—which is absent from the facts alleged here. And none of these cases presented a scenario like the one here, where the allegedly aggrieved party memorialized its understanding that the auditor was ***not*** assuming any additional duties in respect to the audit work at issue.

\* \* \*

In short, Plaintiffs have no valid negligence claims. The access letters under which TH Lee and its advisor received information bar any finding of privity under *Credit Alliance*. Plaintiffs do not cite a single case in which an auditor was held liable to a potential investor based on information provided under access letters like those involved here. Thus it is not

9

surprising that Plaintiffs have disavowed any such claims, limiting themselves to claims of willful misconduct. For the reasons discussed below, however, those claims fail as well.

### III. This Court should dismiss the claims for aiding and abetting fraud because Plaintiffs do not allege facts sufficient to demonstrate a strong inference of actual knowledge or conscious disregard.

Grant Thornton demonstrated in its opening brief that it cannot be held liable for aiding and abetting fraud because the complaint does not allege that it had *actual knowledge* of the fraud at Refco—as required for a claim of aiding and abetting. *See* GT Mem. 19-21. In response, Plaintiffs contend that they have alleged sufficient facts to give rise to a "strong inference" of knowledge, or at least that Grant Thornton consciously avoided such knowledge. Pl. Mem. 18-21. That is simply not the case. Despite TH Lee's intimate knowledge of the events at Refco *after* its investment, it still has been unable to allege any facts supporting the conclusion that Grant Thornton ever knew the truth—until it was revealed long after TH Lee itself had become a Refco insider.

Plaintiffs do not contend that Refco ever provided Grant Thornton with documentation sufficient to disclose the fraud. Indeed, they admit that the uncollectible related-party receivable was replaced on Refco's books by a receivable *from a third party*, so that at the close of each reporting period, Refco's books showed only a loan to a third-party customer that was ultimately repaid. Pl. Mem. 5. They also admit that Grant Thornton sent confirmation requests to confirm at least some of these receivables (*id*. at 7, 18)—and they do not suggest that the responses Grant Thornton received from those customers gave it any additional cause for suspicion. Thus Plaintiffs' argument that "Grant did nothing to investigate these suspicious, recurring transactions" is belied by their own admissions. Grant Thornton sent and received confirmations

10

for these transactions—treating them like any other non-related party customer loan on Refco's books, which is all they appeared to be at the time.[2]

Moreover, all these facts serve only to confirm Grant Thornton's **lack** of knowledge. Plaintiffs allege over and over that if Grant Thornton's audit had been performed differently, Grant Thornton "would have uncovered" the truth. *See* GT Mem. 20-21 (citing complaint). That is quite different from the suggestion that Grant Thornton knew or consciously avoided knowing the truth all along.

Further, all the allegations in the complaint must be understood against the backdrop of the overall alleged scheme—which, according to the various indictments, was specifically designed to keep Grant Thornton in the dark. Plaintiffs acknowledge that the Refco insiders used the so-called round-trip transactions "to hide Refco's true financial position from investors, lenders, regulators, and the public," as the "latest superseding indictment" makes clear. Pl. Mem. 4 (citing Compl. ¶ 19, which in turn cites the indictment). Of course, this is highly misleading, in that the recent indictments also allege that the scheme was designed to hide Refco's true condition from its **auditors**. *See* Superseding Indictment, *United States v. Joseph B. Collins* ¶ 9 (Bennett and others "schemed to hide the true financial health and economic structure of Refco . . . from Refco's banks, counterparties, **auditors**, investors and potential investors") (emphasis added); *see also* Superseding Indictment, *United States v. Phillip R. Bennett* ¶¶ 8, 9, 21, 25, 46, 65 (scheme was designed to hide missing receivable from accountants).

---

[2]  Separately, Plaintiffs contend that Grant Thornton knew about a related-party receivable that existed between Refco and RGHI in 2002 in the amount of $170 million, and that auditor Mark Ramler had obtained an assurance from management that this receivable would be eliminated over time. Pl. Mem. 6. Plaintiffs do not allege, however, (nor could they) that this receivable had been inadequately disclosed or was otherwise hidden from investors.

11

In light of these facts, the pleading standards under Rule 9(b) require considerably more than what Plaintiffs have included in their complaint.  As the Supreme Court recently explained, a complaint can survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007) (examining pleading requirements under the PSLRA); *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000) ("strong inference" standard is same under PSLRA and Rule 9(b)); *Glidepath Holding B.V. v. Spherion Corp.*, No. 04 Civ. 9758, 2007 WL 2176072, at *10 n.5 (S.D.N.Y. July 26, 2007) (Supreme Court's interpretation of the "strong inference of scienter" requirement in *Tellabs* also guides district courts charged with evaluating claims for common law fraud under the heightened pleading standard required by Rule 9(b)).  The Court further instructed that courts must consider plausible opposing inferences in applying this standard.  *Tellabs*, 127 S. Ct. at 2502.  Here, in light of the overall purpose of the Refco scheme, the inference that Grant Thornton did ***not*** know about the fraud is at least as plausible—if not more so—than the inference that it did.

Plaintiffs' factual allegations cannot overcome this problem.  For example, Plaintiffs contend that because Grant Thornton had knowledge of certain specific "reverse repo" transactions, it must have known about the fraud generally.  Pl. Mem. 18-19.  But there is nothing fraudulent about these transactions in and of themselves; it was the role of these transactions in concealing an uncollectible receivable that rendered them fraudulent.  Thus Grant Thornton's knowledge of some of these reverse repo transactions—without more—cannot support an inference of actual knowledge or of conscious disregard.

Similarly, Plaintiffs make much of an undated document that refers to an end-of-period loan from May 2005 and includes a vague notation about intercompany loans. Pl. Mem. 19 (citing Compl. ¶ 54). But that note does not support the inference that Grant Thornton had knowledge of anything illegitimate, as there is nothing illegal or fraudulent about intercompany loans or about the May 2005 transaction standing alone. Moreover, the end-of-period loan from May 2005 came nine months or more *after* TH Lee's investment decision. Thus even if this note did support the inference that Plaintiffs hope to draw, that does nothing to show what Grant Thornton knew months earlier, at the time relevant for the claims in this case.

For all these reasons, Plaintiffs' allegations are insufficient to support a strong inference that Grant Thornton knew about (or was willfully blind to) the fraud at Refco. A defendant cannot aid and abet a tort that it does not know about. Setting aside all the other arguments in this motion, the claim for aiding and abetting must be dismissed on this basis.

**IV.     Plaintiffs cannot establish justifiable reliance.**

Plaintiffs have also failed to plead justifiable reliance—a flaw that requires dismissal of all their claims. Plaintiffs claim they were entitled to rely on Grant Thornton's audit opinions because the opinions concerned matters "'peculiarly within [Grant Thornton's] knowledge' for which Plaintiffs had no independent means of ascertaining the truth.'" Pl. Mem. 29 (citation omitted). But based on the complaint and the access letters they cite, this is simply untrue.

TH Lee, a highly sophisticated investment firm, engaged in extensive due diligence of its own with the aid of a variety of specialists over a lengthy period. As part of that due diligence, TH Lee retained audit firm KPMG as its *own* advisor to investigate Refco's financial affairs, with an eye toward TH Lee's own investment goals. KPMG reviewed Grant Thornton's audit work subject to an acknowledgment that the work had not been performed for TH Lee's benefit

13

or with its interests or objectives in mind. The access letters also memorialized TH Lee's understanding that Grant Thornton's audits should not be taken to supplant TH Lee's own due diligence; that the audits did not address the possibility that material misstatements may occur in the future; and that matters may have existed that might have been assessed differently by TH Lee or KPMG. Braun Decl., Exs. B, C. Under the circumstances, it is hardly the case that Refco's condition was "'peculiarly within [Grant Thornton's] knowledge'" or that Plaintiffs "'had no independent means of ascertaining the truth.'" Thus the complaint does not adequately plead that TH Lee justifiably relied on Grant Thornton's audit work or that those statements "caused" TH Lee's investment. *See Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (complaint must plead facts sufficient to establish that a grant of relief is a plausible possibility).

Contrary to Plaintiffs' suggestion (Pl. Mem. 28), the element of justifiable reliance is not immune from basic pleading requirements. Plaintiffs must allege the necessary elements of a cause of action, and where a complaint affirmatively sets forth facts that negate an element of the claim, dismissal is appropriate. *Manning v. Utils. Mutual Ins. Co.*, 254 F.3d 387, 401 (2d Cir. 2001) (affirming dismissal of fraud claim where allegations of complaint demonstrated that reliance on representations was unreasonable); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp. 2d 228, 259-61 (S.D.N.Y. 1999) (noting that "whether a plaintiff has adequately pleaded justifiable reliance can be a proper subject for a motion to dismiss" and then dismissing fraud claim where reliance could not have been justifiable); *cf. Orlando v. Kukielka*, 40 A.D.3d 829, 832, 836 N.Y.S.2d 252, 255 (2d Dep't 2007) (concluding that "plaintiffs' reliance was unreasonable as a matter of law" where sophisticated investors were told by a broker that he was not vouching for the financial information provided by sellers, and the investors subsequently conducted their own due diligence that revealed potential issues but made the investment

anyway) (cited in Pl. Mem. at 28). In light of the access letters and the facts alleged in the complaint, the requirement of justifiable reliance cannot be satisfied here.

## **CONCLUSION**

For the reasons discussed above and in its opening memorandum, Grant Thornton respectfully urges this Court to dismiss Plaintiffs' claims in their entirety.


Dated:  February 4, 2008　　　　　　　　　　　　　Respectfully submitted,
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　By:　　　　/s/

　　　　　　　　　　　　　　　　　　　　David E. Mollón (dmollon@winston.com)
　　　　　　　　　　　　　　　　　　　　WINSTON & STRAWN LLP
　　　　　　　　　　　　　　　　　　　　200 Park Avenue
　　　　　　　　　　　　　　　　　　　　New York, NY 10166-4193EN

*Of Counsel:*
Margaret Maxwell Zagel　　　　　　　　　Bradley E. Lerman (blerman@winston.com)
Kenneth Cunningham　　　　　　　　　　Catherine W. Joyce (cjoyce@winston.com)
GRANT THORNTON LLP　　　　　　　　Linda T. Coberly (lcoberly@winston.com)
175 West Jackson, 20th Floor　　　　　　 　WINSTON & STRAWN LLP
Chicago, Illinois 60604　　　　　　　　　　35 W. Wacker Drive
Ph: 312-856-0001　　　　　　　　　　　　Chicago, Illinois 60601
Fax: 312-565-347　　　　　　　　　　　　Ph: 312-558-5600
　　　　　　　　　　　　　　　　　　　　Fax: 312-558-5700